FILED
United States Court of Appeals
Tenth Circuit

October 26, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERIC LOPEZ,

Defendant-Appellant.

No. 06-1346

(D.C. No. 05-NM-225-JAP)

(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, McWILLIAMS,** and **GORSUCH**, Circuit Judges.

Defendant Eric Lopez (Defendant) appeals his conviction on one count of

voluntary manslaughter, in violation of 18 U.S.C. §§ 1112 and 1153, and two counts of

using a minor to commit a violent crime, in violation of 18 U.S.C. §§ 25 and 1153.  He

argues that (1) the evidence was insufficient to prove that he killed the victim, or aided

and abetted the person who did; and (2) the district court erred in denying his motion to

dismiss the two counts of using a minor to commit a violent crime, which were added

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

only one week before trial. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

The charges against Defendant stemmed from a fight that took place on the Ute Mountain Ute Indian Reservation in Towoac, Colorado, during the late evening and early morning hours of April 3 and 4, 2005. The victim, Tracy Lopez (Tracy), died of a brain injury inflicted by a tire iron. Defendant and two male juveniles, 16-year-old Boy A and 15-year-old Boy B, were involved in the killing.

In the early evening of April 3, Boy A was at Defendant's home visiting his girlfriend, Defendant's daughter. Defendant got into an argument with his wife, Gloria Lopez (Gloria), and her adult son from a previous relationship, Wilson Jones. Defendant, who believed that Gloria had been having an affair with Tracy, told Gloria that he knew she was going to Tracy's house. During this argument, Jones taunted Defendant and threatened to attack him. Gloria and Jones took the family car and left, precipitating a series of violent altercations between Defendant and Jones wherein Jones repeatedly threatened Defendant and Boy A.

Defendant, his daughter, and Boy A eventually decided to try to speak with Gloria at Tracy's home and to persuade her to return home. They worried that Jones might be there, as he lived in the house above Tracy's, and were concerned about getting into another fight. Believing that they might need assistance, Defendant, his daughter, and Boy A drove to pick up Boy B at his home so that he could help them in case a fight

2

broke out.

At some point before reaching Tracy's house, the group came into possession of a tire iron. After arriving at Tracy's home, Defendant, Boy B, and Boy A got out of the vehicle. Defendant went around the corner of the house and began banging on a door. Meanwhile, one or both of the boys smashed the windows of Tracy's car with the tire iron. Defendant then called the boys over and continued to kick at the back door of the house while one or both of the boys joined in. Tracy did not open the door, and Defendant told the boys to go to the front door of the house, where one or both of them began banging on and kicking that door. After a minute or two, Tracy opened the front door and came outside.

When Tracy came out of the house, the two boys moved away from the door. Defendant came around from the other side of the house and began fighting with Tracy. Testimony varied as to whether the boys aided Defendant during the fight. Both boys agreed that at some point, Defendant got ahold of the tire iron and struck Tracy with it by either throwing it at him or hitting him with it. After Tracy was hit, he stumbled to his porch and fell down.

The testimony of the boys varied as to what happened next. Boy A testified that after Tracy fell down, Defendant said, "Let's get him," at which point all three went over to the porch and beat Tracy for no more than a minute. Boy B claimed that he never hit or kicked Tracy, and also testified that he did not see anyone striking Tracy in the head with the tire iron at this time. Boy A claimed that Defendant hit Tracy in the head "real

3

hard" with an object—possibly the tire iron—approximately five times. Gloria, who was watching from inside Tracy's house, later told a neighbor that Boy A struck Tracy with a tire iron or crowbar (although at trial, Gloria was unable to recall making this statement). After the fight, the three left.

Although neither of the boys claimed to have seen Defendant impale Tracy with the tire iron, medical experts testified that the cause of Tracy's death was a head wound which penetrated four to five inches into his skull. The wound was consistent with Tracy having been struck on the head with a tire iron. Tracy also sustained other injuries that did not cause his death, including a bruise near the top of his head, a superficial laceration on the back of his head, welts across his abdomen consistent with being struck by a long, narrow object, and bruising on his face, arm, leg, and groin.

Defendant later told the two boys not to say anything, but if the police asked what happened to say that Tracy had a bat and that Defendant was acting in self-defense. About a week after the fight, Defendant called the police and offered to speak with them because he had heard rumors to the effect that he was responsible for Tracy's death. When Defendant spoke to the police, he recounted the events of the evening, including the confrontations with Jones. He said that after those events, he, his daughter, and Boy A spent the night at Boy A's house.

When further pressed, Defendant told authorities a different version of the story. He claimed that on the night in question, he, his daughter, Boy A, and another male whose name he did not know went to Tracy's house to get Gloria. They picked up the

4

other boy for backup in case there was a fight.  When they got to Tracy's house, they started banging on the house.  Tracy opened the door and came out with a baseball bat.  He hit Defendant with the bat, causing Defendant to slip on the gravel and fall.  One of the boys handed Defendant a tire iron, and he swung it at Tracy several times.  Defendant then threw the tool at Tracy, and thought he hit him because he heard the impact and saw Tracy stumble and fall down on the porch.  The two boys then began beating Tracy.  After a minute, they all got back in the vehicle and left.  At no time did Defendant claim that either of the boys struck Tracy with the tire iron, nor did he admit that he impaled Tracy with the tool or beat him with it.  Rather, he said that he threw the tool, that he was sorry for killing Tracy, and that he did not mean to do so.

On May 17, 2005, a federal grand jury returned a one-count indictment charging Defendant with second-degree murder and with aiding and abetting others in the commission of that offense, in violation of 18 U.S.C. §§ 2, 1111, and 1153.  Defendant's trial was declared complex and continued, due in part to the forensic testing of evidence.  After a plea agreement fell through, the grand jury returned a superseding indictment charging Defendant with two counts of using a minor to commit a crime of violence in violation of 18 U.S.C. §§ 25 and 1153.  These charges were added on February 6, 2006 – one week before the date scheduled for trial.  The new counts alleged that Defendant used the two juveniles, Boy A and Boy B, to commit the crime of second degree murder and to commit the lesser crime of assault resulting in serious bodily injury.  Three days later, Defendant filed a motion to dismiss these new counts, alleging pre-indictment delay.  The

5

district court denied Defendant's motion, concluding that Defendant was not prejudiced because defense counsel's trial preparation would not be significantly altered as a result of the additional charges. Defendant did not seek a continuance of the trial.

Defendant's trial began on February 13, 2006. On February 17, 2006, the jury returned a verdict of guilty on the lesser included offense of voluntary manslaughter. The jury also found Defendant guilty of two counts of using minors to commit the offense of assault resulting in serious bodily injury. The court sentenced Defendant to a term of 15 years' imprisonment. Defendant filed a timely notice of appeal, and now challenges the sufficiency of the evidence of his voluntary manslaughter conviction. He also argues that the district court erred in denying his motion to dismiss the two counts added by the superseding indictment.

II.

Sufficiency of the evidence to support a jury's verdict is a legal issue that we review *de novo*. United States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001). We ask "whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999) (citation and internal quotation marks omitted). Nevertheless, we will not "uphold a conviction obtained by piling inference upon inference." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999) (citation and internal quotation marks omitted). Instead, there must

6

be some substantial evidence supporting a conviction that does more than raise a mere suspicion of guilt.  Id.

a.

While deliberating, the jury sent out several notes seeking clarification of the aiding-and-abetting instruction.  Defendant now points to those notes as evidence that the jury convicted him as an aider and abettor rather than as a principal.  Any note a jury sends out during its deliberations, however, is legally insignificant and has no place in our analysis when addressing the sufficiency of the evidence to support a verdict.  As we noted in United States v. Espinoza, 338 F.3d 1140, 1148 (10th Cir. 2003), "[t]he jury speaks through its verdict," and nothing else.  In that case, we rejected the defendant's attempt to show, based in part on the jury's note, that the jury had convicted him as an aider and abettor.  We explained that "'[t]he jurors' deliberations during retirement, their expressions, arguments, motives and beliefs represent that state of mind which must precede every legal act and is in itself of no jural consequence.  The verdict as finally agreed upon and pronounced in court by the jurors must be taken as the sole embodiment of the jury's act.'"  Id.  (quoting 8 Wigmore on Evidence § 2348 (John T. McNaughton ed., 1961)).  For us to now clarify what the jury meant by its note "would require an inquiry into jury deliberations that is prohibited by Fed. R. Evid. 606(b)."  Id.  In Espinoza, we further noted that "[e]ven if the rule by its terms does not apply to the jury's note to the judge, the underlying principle does: Courts are not to examine the jury's

7

internal deliberations for the purpose of questioning its verdict." Id. at 1149. For these reasons, Defendant cannot rely on notes generated by the jury to support his argument that he was convicted as an aider and abettor rather than as a principal.

b.

The evidence presented at Defendant's trial is sufficient to sustain the jury's verdict on Count I under a principal theory of liability for voluntary manslaughter. "Voluntary manslaughter requires proof beyond a reasonable doubt that the defendant acted, while in the heat of passion or upon a sudden quarrel, with a mental state that would otherwise constitute second degree murder—either a general intent to kill, intent to do serious bodily injury, or with depraved heart recklessness." United States v. Serawop, 410 F.3d 656, 666 (10th Cir. 2005).

The district court's jury instructions on Count I stated:

[D]efendant is guilty of voluntary manslaughter if . . . :

First: the defendant either intentionally killed Tracy G. Lopez, or intentionally induced serious bodily injury on Tracy G. Lopez resulting in death, or acted recklessly with an extreme disregard for Tracy G. Lopez's life resulting in death;

Second: the killing was committed unlawfully;

Third: the defendant['s] actions were without malice, but instead resulted from a heat of passion caused by adequate provocation  . . .

Appx., Vol. XIII, Doc. 112, p. 10. These instructions correctly stated the law in this circuit as regards voluntary manslaughter. See Serawop, 410 F.3d at 659 (providing model jury instructions for voluntary manslaughter).

8

There is ample evidence to support the conclusion that Defendant "acted recklessly with an extreme disregard for Tracy G. Lopez's life resulting in death." Defendant admitted fighting with Tracy and throwing the tire iron at him. Defendant further stated that no one else picked up the tire iron after Tracy was hit, and that he was "sorry for killing Tracy Lopez." At no time during his confession did Defendant claim that either of the two boys killed Tracy, or even that they did so much as strike him with the tire iron. Both boys, however, said that Defendant fought with Tracy and struck him with the tire iron during the fight. Boy A also testified that Defendant "flung" the tire iron at Tracy, and that after Tracy fell to the ground, Defendant hit him very hard around the face more than five times with an object that could have been the tire iron. Defendant argues that Boy A's testimony on this point is inconsistent with the medical evidence presented at trial, which showed that the fatal blow was to the back of Tracy's head. We think it possible, though, to infer that Boy A could not clearly see what was going on and that, in stating that Defendant was hitting Tracy in the "facial area," he meant that Defendant was hitting Tracy about the head generally. The jury could certainly have concluded as much. Taken together, this evidence is sufficient to sustain the jury's verdict.

The only evidence admitted at trial that could support Defendant's theory that it was Boy A who killed Tracy with the tire iron came in through rebuttal witnesses who testified about a statement allegedly made by Gloria after the incident. A neighbor testified that Gloria, who was "pretty intoxicated" at the time, told her that Boy A hit Tracy with a crowbar or tire iron. Appx., Vol. VII at 756, 765. Gloria also told a law

9

enforcement officer that Boy A struck Tracy with a tire iron. When Gloria took the stand, however, she could not recall that she ever told anyone that she saw Boy A hit Tracy with a tire iron. The jury was therefore free to reject Defendant's argument at trial that it was actually Boy A who killed Tracy, given the minimal (and conflicting) evidence supporting this theory.

Defendant's additional arguments to the contrary are unpersuasive. Defendant devotes part of his appellate briefing to the alleged absence of evidence that he knew that Tracy was going to be, or was being killed. The government, however, was not required to prove that Defendant knew that Tracy would be killed, but was only required to prove that Defendant "acted recklessly with an extreme disregard" for Tracy's life, and that those actions resulted in Tracy's death. Appx., Vol. XIII, Doc. 112, p. 10. The jury could have reached this conclusion based on Defendant's admission that he killed Tracy, coupled with the additional testimony that it was Defendant who hit Tracy in the head with an object repeatedly and with significant force.

Defendant also argues that there was no evidence that he stood next to Tracy and hit him on the head with the tire iron with sufficient force to penetrate four to five inches into Tracy's skull. Defendant claims this establishes that he could not have been the actual killer, because it was this penetration that caused Tracy's death. Nonetheless, when taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could have found Defendant guilty beyond a reasonable doubt.

Defendant admitted killing Tracy with the tire iron, and there is additional testimony that he hit Tracy in the head with an object repeatedly and with force. That there is no specific testimony regarding the penetration of Tracy's skull is immaterial under our standard of review, given the ample additional testimony that Defendant struck Tracy in the head.

We conclude that there was sufficient evidence to support Defendant's conviction for voluntary manslaughter as a principal. Because the jury could reasonably have convicted Defendant as a principal, we need not address whether the evidence was also sufficient to convict him as an aider and abettor. Cf. United States v. Dunne, 324 F.3d 1158, 1162-63 (10th Cir. 2003) (noting that 18 U.S.C. § 2 has abolished the common law distinction between principal and accessory).

## III.

Defendant contends that the district court erred in denying his motion to dismiss Counts II and III of the superseding indictment, which were added one week before trial. In the district court, Defendant argued that the counts should be dismissed based upon pre-indictment delay. Now, for the first time on appeal, Defendant argues that the addition of Counts II and III violated his rights under the Speedy Trial Act, and that the convictions on these counts should be vacated and the case remanded for a new trial on these counts. Defendant argues that he "should not have to choose between a 30-day preparation period for brand new charges and a trial date for which he is ready and eager." Appellant's Br. at 31.

Claims not raised below are waived in the absence of plain error. United States v. Arras, 373 F.3d 1071, 1075 (10th Cir. 2004). "Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007).

Defendant's challenge to the district court's denial of the motion to dismiss is premised on the Speedy Trial Act's requirement that a defendant be given at least 30 days to prepare for trial. See 18 U.S.C. § 3161(c). In United States v. Rojas-Contreras, 474 U.S. 231, 236 (1985), however, the Supreme Court held that the Speedy Trial Act "does not require that the 30-day trial preparation period be restarted upon the filing of a superseding indictment . . . ." The Court further made clear that although the 30-day period does not start over at the filing of a superseding indictment, this does not mean "that a defendant must always be compelled to go to trial less than 30 days after the filing of such an indictment. The Act itself places broad discretion in the District Court to grant a continuance when necessary to allow further preparation." Id.; see also id. at 240-41 (Blackmun, J., concurring in the judgment) ("[A] continuance should be granted where there is a meaningful possibility that a superseding indictment will require an alteration or adjustment in the planned defense."). Thus, under the Speedy Trial Act, a defendant's remedy when a superseding indictment adds charges that require further trial preparation is to seek a continuance, and not, as Defendant argues, an outright dismissal of the new charges or vacatur of the convictions arising from those new charges. See United States

12

v. Smith, 24 F.3d 1230, 1234-35 (10th Cir. 1994) (holding that there was no violation of defendant's Speedy Trial Act rights where the district court granted a continuance due to a superseding indictment returned five days before trial which added new charges based on "recently acquired information"); United States v. McKinnell, 888 F.2d 669, 675-76 (10th Cir. 1989) (holding that the proper remedy if the superseding indictment "operates to prejudice a defendant" is a continuance), abrogated on other grounds, United States v. Wacker, 72 F.3d 1453 (10th Cir. 1995).

Here, Defendant did not afford himself of an immediate remedy by seeking a continuance of the trial. When viewed through the lens of the Speedy Trial Act, it was not plain error for the district court to deny Defendant's motion to dismiss Counts II and III, which were added one week before trial.

IV.

The judgment of the district court is AFFIRMED. The parties' motions to file their briefs and addendum under seal are GRANTED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge