McLeese, Associate Judge,
dissenting:
The court affirms the trial court’s decision to grant judgment as a matter of law to appellee Gordon L. Latney. I would reverse, and I therefore respectfully dissent.
I.
Appellant Andre V. Fisher, Jr., brought this action, claiming that Mr. Latney negligently caused a car accident in which Mr. Fisher was injured. At trial, Mr. Fisher testified that the accident occurred when he was changing lanes. He was driving at the speed limit, approximately twenty-five or thirty miles per hour, and was not cutting in and out of traffic. He looked in his mirror, saw nothing, and changed lanes. He was then hit from behind, causing his car to cross the median and hit a pole. After the accident, Mr. Latney, who was driving the other car involved in the accident, went over to Mr. Fisher and said, “[M]y bad, I’m sorry this had to happen.”
Mr. Latney testified that he saw Mr. Fisher driving in front of him. Mr. Fisher was going about thirty-five miles per hour, which was ten miles per hour above the speed limit. Mr. Fisher was cutting in and out of traffic. Mr. Latney could have slowed down to stay away from Mr. Fisher, but he did not do so. When Mr. Fisher slowed down at a traffic light, Mr. Latney caught up with Mr. Fisher. The light turned green, and Mr. Fisher tried to pass slower cars in front of him. When that proved impossible, Mr. Fisher cut across two lanes of traffic, in an effort to squeeze in between Mr. Latney’s car and the car in front of Mr. Latney’s car. Mr. Fisher’s rear bumper hit Mr. Latney’s front bumper, causing both cars to crash.
The verdict form posed two questions to the jury: “(1) Do you find that [Mr.] Lat- *96 ney was negligent, and that his negligence was a proximate cause of the auto accident on July 22, 2008?”; and, if the answer to the first question was yes, “(2) Do you find that [Mr.] Fisher was also negligent and that his negligence was a proximate cause of the accident on July 22, 2008?” At 2:01 p.m. on the last day of trial, the jury sent out a note indicating that it had reached a verdict. The jury then announced a verdict answering the first question in the negative. During a jury poll, however, the first juror stated that she did not agree with the verdict but all of the other jurors did. The trial court sent the jury back to continue deliberations. At 2:34 p.m. on the same day, the jury sent out a note stating, “It appears we are at an impasse. And no further deliberation will produce a unanimous verdict.” Over Mr. Fisher’s objection and motion for a mistrial, the trial court gave the jury an anti-deadlock instruction taken from Standardized Civil Jury Instructions for the District of Columbia, No. 1-13 (2012 rev. ed.), and modeled on an instruction approved by this court in Winters v. United States, 317 A.2d 530 (D.C.1974) (en banc). At 3:53 p.m. on the same day, the jury sent out a note stating, “It seems we agree ... not to agree. If the questions were reverse[d,] we all agreed that both were at fault. Per unan[im]ous decision. Per neglect we seem[ to] agree [it is] mostly Mr. Fisher.” Finally, at 3:57 p.m. the same day, the jury sent out a note stating, “After further deliberation we are unable to reach a unanimous decision on [q]uestion number 1. While question 2 may then not be rel[eva]nt, we do unanimously agree that Mr. Fisher was negligent and is most at fault for the accident.”
Mr. Fisher again moved for a mistrial. The trial court instead discharged the jury and subsequently issued a written order granting judgment as a matter of law to Mr. Latney. The trial court based its ruling on “the dearth of evidence regarding [Mr. Latney’s] negligence, and ample evidence that [Mr.' Fisher] was primarily responsible for the accident.” The trial court also stated, “The fact that the jurors could not agree on whether [Mr. Latney] was negligent is indicative of the lack of compelling evidence on the issue. The Jur[ors] in their notes confirmed that they unanimously agreed that [Mr. Fisher] was negligent and ‘most at fault[,]’ which is a total bar to recovery.”
II.
Judgment as a matter [of] law may be properly granted where there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue. Super. Ct. Civ. R. 50(a)(1). This court considers de novo whether the evidence was sufficient to go to the jury. The record must be viewed in the light most favorable to the non-moving party, who is entitled to the benefit of every reasonable inference from the evidence. It is the responsibility of the jury (and not the judge) to weigh the evidence and to pass upon the credibility of witnesses. If impartial triers of fact could reasonably find the plaintiffs evidence sufficient, the case may not be taken from the jury.
Washington Metro. Area Transit Auth. v. Ferguson, 977 A.2d 375, 376-77 (D.C.2009) (internal quotation marks omitted).
I conclude that the evidence was legally sufficient to support a verdict in Mr. Fisher’s favor. In granting judgment as a matter of law to Mr. Latney, the trial court first stated that it “did not credit” Mr. Fisher’s version of events. Except in extraordinary circumstances not present here, however, a trial court ruling on a motion for judgment as a matter of law should not weigh the evidence or pass *97 upon witness credibility. Ferguson, 977 A.2d at 377.
Second, the trial court referred without explanation to the “dearth of evidence” that Mr. Latney was negligent. To the contrary, when the evidence is viewed in the light most favorable to Mr. Fisher — as it must be — a reasonable juror could conclude that Mr. Latney was driving negligently and that Mr. Fisher was not. Cf., e.g., Dohoney v. Imperial Ins., 87 A.2d 412, 413-15 (D.C.1952) (evidence permitted reasonable jury to find that plaintiff in negligence action was not contributorily negligent, where defendant struck rear side of plaintiffs car and plaintiff testified that she had not seen approaching traffic; “From the mere fact that [plaintiff] failed to observe [defendant’s] automobile, ■ it does not necessarily follow that she was negligent as a matter of law and that her negligence was a contributing cause to the accident. Generally negligence and contributory negligence are questions of fact to be decided by the trier of the facts, whether judge or jury. If fair-minded men may honestly draw different conclusions as to the existence or nonexistence of the negligence charged, the question is not one of law but of fact.”) (citing cases).
Third, the trial court stated that the jury’s inability to reach a unanimous verdict as to whether Mr. Latney was negligent “is indicative of the lack of compelling evidence on the issue.” The jury’s inability to reach a verdict on an issue is not relevant to whether the evidence on the issue is legally sufficient. See, e.g., Yeager v. United States, 557 U.S. 110, 121, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009) (“Because a jury speaks only through its verdict, its failure to reach a verdict cannot — by negative implication — yield a piece of information that helps put together the trial puzzle. ... [T]here is no way to decipher what a hung count represents. Even in the usual sense of ‘relevance,’ a hung count hardly makes the existence of any fact ... more probable or less probable.”) (internal quotation marks omitted); cf. United States v. Powell, 469 U.S. 57, 68, 105 S,Ct. 471, 83 L.Ed.2d 461 (1984) (“Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be independent of the jury’s determination that evidence on another count was insufficient.”) (citations omitted). More fundamentally, Mr. Fisher did not have the burden of producing “compelling evidence” of Mr. Latney’s negligence. Rather, Mr. Fisher was required only to produce evidence sufficient to permit a reasonable juror to find that Mr. Latney was negligent.
The trial court’s final reason for granting judgment as a matter of law to Mr. Latney was that jury notes indicated that the jury unanimously believed that Mr. Fisher was negligent, which is a “total bar to recovery.” Like a jury’s inability to reach a verdict, or a jury’s verdict on other counts, a jury’s notes are not relevant to whether the evidence is legally sufficient. United States v. Lopez, 252 Fed.Appx. 908, 912 (10th Cir.2007) (“Any note a jury sends out during its deliberations, however, is legally insignificant and has no place in our analysis when addressing the sufficiency of the evidence to support a verdict.”); Stevenson v. State, No. 05-93-00795-CR, 1997 WL 472307, at *3 (Tex.Ct.App. Aug. 20, 1997) (“Whether the jury verdict is supported by legally sufficient evidence is measured by the evidence presented at trial, not by jury notes sent to the trial judge after both sides have closed. We conclude the jury note is immaterial for purposes of determining the sufficiency of the evidence.”) (internal citation omitted). The jury notes therefore provide no basis, upon which to grant judgment as a *98 matter of law to Mr. Latney. (Reliance on the jury notes is in any event problematic for the additional reasons I discuss infra.)
The opinion for the court relies on Blackwell v. Dass, 6 A.3d 1274, 1276 (D.C.2010), as supporting the trial court’s grant of judgment as a matter of law to Mr. Latney. Ante at 94-95. In my view, that reliance is misplaced. In Blackwell, the trial court revised the verdict form based on notes that the jury sent out during deliberations. 6 A.3d at 1277. The jury thereafter returned a unanimous verdict. Id. This court affirmed, holding that the jury had not violated the trial court’s instructions, that the trial court had not abused its discretion in revising the verdict form, and that the verdict was not tainted by juror coercion. Id. at 1278-81. Nothing in Blackwell supports a conclusion that the trial court in this case was correct to take the case away from the jury and grant judgment as a matter of law to Mr. Lat-ney.
For the foregoing reasons, I would reverse and remand for further proceedings.
III.
The opinion of the court addresses two further issues: whether the trial court correctly refused to give an instruction on the “last clear chance” doctrine and whether the trial court abused its discretion by refusing to grant a mistrial after a juror had identified herself as the lone dissenter. Ante at 92-95. Given that the jury did not return a verdict, one might wonder why the court needs to address whether the jury was correctly instructed and whether the trial court should have granted a mistrial. I infer that the court addresses those issues because both the trial court and this court rely on the jury’s notes as support for the decision to grant judgment as a matter of law. Ante at 95-96. As I have just indicated, jury notes are not relevant in reviewing a trial court’s decision to grant judgment as a matter of law. Even if jury notes could be relevant in some circumstances, however, I conclude that no weight could appropriately be given to the jury notes in this case, because the jury was not correctly instructed and because the trial court’s anti-deadlock instruction created an undue risk of juror coercion.
A.
Mr. Fisher asked the trial court to instruct the jury on the “last clear chance” doctrine. As the opinion for the court explains, ante at 92-93, that doctrine is an exception to the general rule in the District of Columbia that a plaintiffs contributory negligence bars recovery. The doctrine applies when:
(1) the plaintiff was in a position of danger caused by the negligence of both the plaintiff and the defendant;
(2) the plaintiff was oblivious to the danger or unable to extricate himself from the position of danger; (3) the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiffs danger and of his obliviousness to it, or of his inability to extricate himself from it; and (4) the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and of his inability to extricate himself from it, but failed to do so.
Juvenalis v. District of Columbia, 955 A.2d 187, 196 (D.C.2008).
Our cases are not clear on the standard by which we review a trial court’s refusal to give a requested instruction. Compare, e.g., (Edward) Brown v. United States, No. 13-CF-1234, 139 A.3d 870, 2016 WL 3031337, at *3 (D.C. May 26, 2016) (“[W]e *99 review for abuse of discretion a trial court’s assessment of whether a jury instruction is supported by the evidence.”), with, e.g., Andrews v. United States, 125 A.3d 316, 321 (D.C.2015) (“The sufficiency of the evidence to support the instruction is a question of law, as to which our review is de novo.”); see also, e.g., Washington Metro. Area Transit Auth. v. Cross, 849 A.2d 1021, 1024 (D.C.2004) (“If there is some evidence to support a requested instruction, a trial judge does not have discretion to refuse to give it.”) (internal quotation marks omitted). It appears to be well settled, however, that “a requested instruction should be given if there is some evidence supporting” the request. Dennis v. Jones, 928 A.2d 672, 677 (D.C.2007) (internal quotation marks omitted). Moreover, “[i]n determining whether there was sufficient evidence presented, this court reviews the record in the light most favorable to the party requesting the instruction.” Cross, 849 A.2d at 1024. I see no need to delve further into the applicable standard of review. Even if we must defer to the trial court, I would hold that the trial court abused its discretion by denying the requested instruction.
The trial court did not give a specific reason for denying the requested instruction. In this court, Mr. Latney appears to argue that none of the requirements of the “last clear chance” doctrine were supported by the evidence. The opinion for the court appears to rely on the second and fourth requirements of the doctrine. Ante at 93-94. I conclude that there was some evidence to support a finding for Mr. Fisher on all four requirements.
First, Mr. Fisher testified that he looked in his mirror and did not see Mr. Latney’s car behind him. That testimony was some evidence that Mr. Fisher was negligent. Mr. Latney’s testimony that Mr. Fisher was speeding and cutting in and out of traffic was further evidence of Mr. Fisher’s negligence. There also was some evidence that — as Mr. Latney contemporaneously indicated to Mr. Fisher — Mr. Latney’s negligence contributed to the accident in which Mr. Latney’s car struck Mr. Fisher’s car from behind. Cf, e.g., King v. Pagliaro Bros. Stone Co., 703 A.2d 1232, 1234 (D.C.1997) (although “the negligence of the trailing car colliding with a forward car is essentially a question for the fact finder to determine and not a matter of law[,] ... [w]e have also recognized. .,. the generally accepted rule that the primary duty to avoid collision as between the motorist ahead and the motorist following lies with the motorist behind”) (brackets and internal quotation marks omitted). Second, Mr. Fisher testified that he had checked his mirror before changing lanes and did not see a car. That was some evidence that Mr. Fisher was oblivious to the danger created by changing lanes when he did. Third, Mr. Latney acknowledged that he saw Mr. Fisher speeding and cutting in and out of traffic. That was some evidence that Mr. Latney was or should have been aware that Mr. Fisher was oblivious to the danger posed by his conduct. Fourth, Mr.' Latney acknowledged that, when he saw Mr. Fisher cutting in and out of traffic several blocks before the accident, he could have slowed to avoid coming near Mr. Latney’s car but did not do so. That was some evidence that Mr. Latney could have avoided the accident after becoming aware of the danger.
In concluding that the evidence did not support a “last clear chance” instruction, the opinion for the court makes several statements about what in the court’s view the evidence “showed” or “established.” Ante at 93-94. But the evidence at trial was disputed, and we must view the evidence in the light most favorable to Mr. Fisher. In my view, there was some evidence that Mr. Fisher was carelessly *100 changing lanes; that Mr. Fisher was not aware that any cars were behind him, and thus was unaware that his conduct was dangerous to such cars; that Mr. Latney noticed that Mr. Fisher was carelessly changing lanes and could have avoided coming near to Mr. Fisher’s car; and that Mr. Latney did not keep his distance and instead carelessly collided with Mr. Fisher’s car from behind. That evidence supported the requested instruction, Cf., e.g., Washington Metro. Area Transit Auth. v. Young, 731 A.2d 389, 395-97 (D.C.1999) (bicyclist was entitled to “last clear chance” instruction because bus driver could have taken precautions to avoid accident; “WMÁTA’s claim that the driver would have had to act instantaneously to avoid the accident is unpersuasive because it assumes that the diiver was under no duty to act until after he began the turn. The jury could reasonably find, however, that the driver could and should have avoided the accident by stopping before he began his turn.”) (citations and internal quotation marks omitted).
For the foregoing reasons, I conclude that the trial court erred in denying the request for a “last clear chance” instruction. It follows that the trial court also erred in concluding that a finding by the jury that Mr. Fisher was negligent would be a total bar to recovery. Rather, a correctly instructed jury could reasonably have found that Mr. Fisher had been negligent1 but nevertheless was entitled to recover under the “last clear chance” doctrine.
B.
Finally, the opinion for the court holds that the trial court did not abuse its discretion in refusing to grant a mistrial after a juror dissented during a jury poll and indicated that she was the lone dissenter. Ante at 94-95. In the circumstances of this case, I would hold to the contrary.
At the outset, I note that the opinion for the court does not squarely address what I view as the central question: whether the trial court was obliged to grant Mr. Fisher’s second mistrial motion, made after the jury sent out a deadlock note. Instead, the opinion of the court focuses on whether the trial court was obliged to grant Mr. Fisher’s first mistrial motion, made at the point that the'juror identified herself as the lone dissenter during the jury poll. Ante at 94-95. I conclude that the trial court abused its discretion by giving an anti-deadlock instruction- rather than granting Mr. Fisher’s second mistrial motion.
In deciding whether a mistrial was required because of concerns about juror coercion arising from a breakdown in a jury poll, we consider: (1) the inherent coercive potential of the circumstances; and (2) whether actions the trial court took exacerbated or alleviated the situation’s coercive potential. (Marcus) Brown v. United States, 59 A.3d 967, 974 (D.C.2013).
As we have noted, every jury poll has an inescapable element of coercion. When dissent is revealed in open court and the jury is simply instructed to continue deliberations, the most obvious danger is that the dissenting 'jurors will conclude that the trial judge is requiring further deliberations in order to eliminate their dissent.
Id. at 974-75 (internal quotation marks omitted). We have emphasized the heightened potential for coercion when “the numerical split of the jury and- the identity of the only dissenter have been revealed in open court.” Crowder v. United States, 383 A.2d 336, 342 (D.C.1978). Finally, we have explained that the giving of an anti-deadlock instruction after a jury poll reveals dissent can “exacerbate[ ] the potential for *101 coercion.” Benlamine v. United States, 692 A.2d 1359, 1365 (D.C.1997) (internal quotation marks omitted).
As far as I am aware, this court has never before approved the giving of an anti-deadlock instruction to a jury that reported a deadlock after a juror had been identified as a lone dissenter in open court. To the contrary, we have on at least two occasions reversed convictions in comparable circumstances. Benlamine, 692 A.2d at 1360-65 (trial court abused its discretion by denying motion for mistrial and instead giving anti-deadlock instruction after jury poll revealed that ninth juror dissented from verdict); Davis v. United States, 669 A.2d 680, 682-85 (D.C.1995) (same where third juror dissented from verdict) (citing cases).
This case differs from Benlamine and Davis, because the anti-deadlock instruction in this case contained language telling jurors not to surrender their “honest and firmly held beliefs simply to reach a verdict or to conform to feelings of other jurors.” Such language can help to ameliorate coercion. See, e.g., (Marcus) Brown, 59 A.3d at 977-78. Nevertheless, much of the language of the anti-deadlock instruction in this case was taken from the instruction in Winters. That language was designed to push "jurors in the direction of unanimity. Specifically, the trial court told jurors that “[i]t is desirable that the case be decided”; that “it [was their] duty to decide the case”; that they should “be open to being convinced”; that they should question their position if other jurors were not persuaded; and that they should “try a little bit more to see if [they could] reach a unanimous decision.” We have previously stated that “if the trial court uses language from the Winters anti-deadlock instruction for a poll breakdown, it will increase the risk of coercion unacceptably.” (Marcus) Brown, 59 A.3d at 974; see also Smith v. United States, 542 A.2d 823, 825 (D.C.1988) (“When a jury reveals its numerical division and the judge then gives a Winters instruction, the potential for coercion is great.”).
Moreover, in neither Benlamine nor Davis was a lone dissenter identified in open court, whereas in the present case the dissenting juror identified herself as the sole dissenter, which heightens the potential for coercion. Crowder, 383 A.2d at 342. Although the opinion for the court points out that there was no confirmation of the dissenting juror’s statement that she was the lone dissenter, ante at 94, I see no reason to doubt the juror’s statement. Moreover, “our evaluation of jury coercion focuses on probabilities, not certainties.” Davis, 669 A.2d at 685. On balance, I would conclude that it was an abuse of discretion to give the jury an anti-deadlock instruction.
Because of the undue risk of juror' coercion, no weight can appropriately be placed on the jury notes at issue. Thus, those notes should be disregarded even if they would otherwise have been relevant to the trial court’s decision to grant judgment as a matter of law to Mr. Latney.
In sum, I would reverse the trial court’s grant of judgment as a matter of law to Mr. Latney. I therefore respectfully dissent.