**Bessie CROSS, Appellant,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.**

No. 97–CV–460.

District of Columbia Court of Appeals.

Submitted June 11, 1998.

Decided Nov. 24, 1999.

Lloyd D. Iglehart, Columbia, MD, was on the brief for appellant.

Robert L. Polk, General Counsel, with whom Robert J. Kniaz, Deputy General Counsel, and Vincent Jankoski, Assistant General Counsel, were on the brief for appellee.

Before WAGNER, Chief Judge, and STEADMAN and RUIZ, Associate Judges.

PER CURIAM.

Appellant, Bessie Cross, appeals from the judgment of the trial court directing a verdict in favor of appellee, Washington Metropolitan Area Transit Authority (WMATA), in an action for damages for injuries allegedly sustained when a bus on which she was a passenger came to a sudden stop. Cross argues that the trial court erred in granting the motion because there was sufficient evidence upon which a reasonable juror could find a verdict in her favor. We agree, and reverse.

## I.

At the jury trial of the case, the two witnesses to the accident, Cross and Loretta Carswell, the bus driver for WMATA, provided different versions of how the accident happened. According to Cross, on June 11, 1993, she boarded the bus at the intersection of 19th Street and Pennsylvania Avenue, N.W. She had been riding this route for over fifteen years. Cross paid her fare and looked for a seat. The bus was 15–20 minutes behind schedule. Cross testified that the bus pulled off without giving her time to be seated. When Cross reached the middle of the bus she saw an empty seat, but before she could sit down, the bus stopped suddenly. As a result of the impact, Cross was thrown through the air, struck her head and landed on the stairs. According to Cross, the bus driver was moving at an unusually fast rate of speed before the sudden stop. Indeed, Cross testified that the driver was speeding. Cross could not see what might have caused the driver to stop suddenly because her back was to the front of the bus.

The bus driver's version of the events was substantially different. According to Carswell, it was her last trip for the evening after an eight hour shift. She was about three to five minutes behind schedule. She recognized Cross, who rode the route nightly, when she boarded the bus at 19th Street and Pennsylvania Avenue. According to Carswell, she did not pull the bus away from the stop until after Cross was seated. She testified that she was going only five to ten miles per hour when she pulled away from the stop. It took her three to five minutes to travel from 19th Street to 20th Street on Pennsylvania Avenue where she stopped at the 20th Street intersection for a red light. Carswell testified that "[t]he bus was just getting ready to start off when I applied the brakes because the car cut me off." When asked to explain what happened when the light turned green at the 20th Street intersection, Carswell responded:

I did my observation. I looked both ways. The car on the left-hand side of me pulled out. And when I looked to my right and looked back to my left, the car was pulling out as I started accelerating.

She testified that the car to her left was not the car which cut her off, but a car which came from behind her. Carswell said that she took no other evasive action other than hitting her brakes. According to Carswell, it was when she hit the brakes that Cross fell.

Carswell was impeached on several parts of her version of the events with her deposition testimony. She acknowledged at trial that at her deposition she testified that she thought Cross had boarded the bus at 17th Street and Pennsylvania Avenue; that she could not remember how fast she pulled away from the bus stop; that she did not know how fast she was traveling before she had to apply her brakes suddenly; and that she did not know the distance between the front of the bus and the vehicle which caused her to apply her brakes nor whether she would have struck it had she not applied her brakes.

The trial court granted WMATA's motion for directed verdict at the close of Cross' case. In granting the motion, the trial court was persuaded that the bus driver's version that she was cut off by an unknown driver coming across the left to

go up 20th Street, which caused her to apply her brakes in a sudden emergency, was uncontradicted. Therefore, the court agreed with WMATA that the bus company could not be held liable for injuries sustained when, according to the bus driver, she had no choice but to stop for a sudden emergency.

## II.

■ In a jury trial, a judgment as a matter of law can be granted at the conclusion of a party's case when "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue...." Super. Ct. Civ. R. 50(a)(1). In reviewing the motion for directed verdict, the evidence must be viewed in the light most favorable to the non-moving party, giving that party "the benefit of all reasonable inferences to be drawn from the evidence." *Abebe v. Benitez,* 667 A.2d 834, 836 (D.C.1995) (citing *District of Columbia v. Evans,* 644 A.2d 1008, 1019 (D.C.1994) (other citations omitted)). The trial court " 'must take care to avoid weighing the evidence, passing on the credibility of witnesses, or substituting its judgment for that of the jury.' " *Id.* (quoting *Pazmino v. Washington Metropolitan Area Transit Auth.,* 638 A.2d 677, 678 (D.C.1994) (other citation omitted)). Applying this standard, we are persuaded that there was sufficient evidence to permit the jury to find in Cross' favor.

■ In this case, there were two different versions concerning when and how this accident occurred. According to Cross, the bus driver sped away from the stop and then stopped suddenly, causing her to fall and injure herself. According to the bus driver, Cross took her seat and then she traveled for some three to five minutes at a slow rate of speed from 19th to 20th Street, stopped and waited for the light, and had just started again before being confronted by a car which pulled in front of her. Contrary to the bus driver's account, according to Cross, there was no stop before the sudden braking when she was thrown onto the stairs. Not only do these versions of the accident differ in material respects, but the bus driver was impeached on significant parts of her testimony, raising credibility issues concerning her testimony for the jury to resolve. Under the circumstances presented here, a reasonable juror could reject the driver's claim that she was confronted by a phantom driver pulling around in front of her after she had first waited for the light to turn green. It could then credit Cross' account that right after she boarded the bus and was seated, the driver unreasonably sped off and then braked suddenly. A jury could have credited Cross' account about the speed of the bus, particularly in light of the testimony of both Cross and Carswell that the bus was running behind schedule.

WMATA argues that this court's decision in *D.C. Transit System, Inc. v. Carney,* 254 A.2d 402 (D.C.1969), supports its position. It contends that in *Carney,* as in the present case, judgment as a matter of law for the bus company is required where the undisputed evidence shows that a plaintiff's fall on the bus occurs when the bus operator suddenly stops the bus in order to avoid a collision with another vehicle. In *Carney,* a passenger was injured when the bus stopped suddenly immediately after entering the intersection because a car suddenly made a right turn in front of the bus. *Id.* at 403. This court upheld the grant of a motion for judgment notwithstanding the verdict for the bus company because the record failed to show any basis upon which negligence by the company could be inferred. *Id.* at 404. In *Carney,* witnesses agreed that the bus was moving very slowly and had gone only a short distance before stopping. *Id.* There was evidence that the car was 25 to 30 feet from the bus and swerved across two lanes of traffic to turn in front of the bus. *Id.* However, the court acknowledged that even if an emergency stop is necessary, "the question then arises as to

how the bus driver became involved in that situation. If it was created partially by the negligence of the bus driver, then [the bus company] would be liable." *Id.* (citing *Cole v. Capital Transit Co.*, 90 U.S.App. D.C. 289, 195 F.2d 568 (1952) and *Lindsey v. D.C. Transit Co.*, 140 A.2d 306, 309 (D.C.1958)); *see also Loketch v. Capital Transit Co.*, 101 U.S.App. D.C. 287, 288–89, 248 F.2d 609, 610–11 (1957).

The trial court reviewed *Carney,* but was not persuaded that there was sufficient evidence of negligence of the bus driver in this case to submit the case to the jury. We disagree. In *Carney,* unlike this case, witnesses agreed on the movements of the bus before the sudden stop, including its slow rate of speed. There was no conflict in the evidence concerning when the sudden stop occurred. Here there was evidence that the bus was speeding just before it stopped suddenly. The jury might have considered the speed of the bus, particularly while a passenger was still standing, as evidence of negligence by the bus driver. Viewing the evidence in the light most favorable to Cross, a jury acting reasonably is not compelled to draw only the conclusion that the bus driver was not negligent. The case may be somewhat close, but under our standard of review, it should have been submitted to the jury to determine the issues.

For the foregoing reasons, the judgment of the trial court is reversed with instructions to grant a new trial.

*So ordered.*