**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Appellant,**

**v.**

**Bessie CROSS, Appellee.**

**No. 01–CV–338.**

District of Columbia Court of Appeals.

Argued March 12, 2003.
Decided May 20, 2004.

Gerard J. Stief, Associate General Counsel, with whom Cheryl C. Burke, General Counsel, Robert J. Kniaz, Deputy General Counsel, and Vincent A. Jankoski, Associate General Counsel, were on the brief, Springfield, VA, for appellant.

Lloyd D. Iglehart, with whom Kenneth Robinson was on the brief, for appellee.

Before STEADMAN, RUIZ and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge.

This case, which arises from appellee Bessie Cross's injurious fall on a Metrobus, has been in this court once before. In *Cross v. Washington Metropolitan Area Transit Authority (WMATA)*, 740 A.2d 977 (D.C.1999), we reversed the trial court's grant of WMATA's motion for a directed verdict. We held that the evidence that the driver of the bus accelerated negligently and then had to slam on the brakes while Cross was standing in the aisle, causing her to lose her footing and fall, was sufficient to require submission of her case to the jury. In the retrial following our decision, the jury returned a plaintiff's verdict and awarded Cross $100,000 in damages. This time it is WMATA that has appealed. Because we agree with WMATA that the trial court erred in declining to instruct the jury on contributory negligence, we are constrained to reverse and remand for a third trial of this action.

On the question of liability, the trial was a credibility contest between Cross and the bus driver, Loretta Carswell. Cross testified that she was 71 years old when she boarded the Metrobus at 19th Street and Pennsylvania Avenue, N.W., shortly after 11:00 p.m. on June 11, 1993. According to her, the bus was around twenty minutes late and was crowded; the "senior citizen" seats at the front in which Cross

usually sat were occupied. Cross paid her fare and started walking down the aisle, looking for a seat. Before she could sit down, Cross testified, the bus "took off . . . faster than they ever went before." The driver appeared to be in a hurry. Cross "never had a chance to sit down." She was "trying to hold on" as she walked down the aisle, but halfway down she "heard a crash and . . . couldn't hold [on] any longer." Cross fell backwards and struck her head on the railing next to the front doors of the bus.

The driver of the bus gave a different account of the incident. According to Loretta Carswell, she was only a minute or two late when she picked up Cross at 19th and Pennsylvania. Carswell knew that Cross, who was a regular passenger on her route, was elderly, moved slowly, and had complained of arthritis in her legs. Carswell insisted that she waited until Cross sat down at the front of the bus before she pulled away from the stop. She agreed that it would have been "improper" and contrary to her driver training to leave the bus stop while such a passenger was still walking to her seat. After Cross was seated, Carswell drove the bus west on Pennsylvania Avenue. At the next intersection, Carswell said, a car on her left unexpectedly turned right in front of the bus to head north on 20th Street, forcing her to slam on the brakes to avoid a collision.[1] "[T]he next thing I know," Carswell testified, "Ms. Cross was coming backwards. . . . She banged up against the fare box and the pole and she fell down in the stairwell."

Although Carswell testified that she did not see Cross get up or walk down the aisle, the implication of her testimony was that Cross must have left her seat for some unknown reason after the bus was in motion. Carswell was impeached with her contemporaneous accident report, in which she said nothing about Cross already being seated and instead stated that Cross was walking to her seat when she fell—implying that the bus began moving before Cross found a seat, as Cross claimed. Carswell explained her accident report statement by saying that although she herself had not seen it, passengers on the bus told her after the accident that Cross "had gotten up from her seat to move to another seat." The jury was admonished to consider this hearsay only for the purpose of evaluating Carswell's credibility and not for the truth of the matter asserted.

At the close of the evidence, WMATA requested the court to instruct the jury on both contributory negligence and assumption of the risk. On contributory negligence, WMATA argued that the jury could credit Carswell's testimony that Cross was seated before the bus left the stop, infer that Cross had left her seat while the bus was moving, and conclude that "changing your seat when you are that age on a moving bus is [contributorily] negligent." Alternatively, WMATA argued, even if the jury found no contributory negligence on Cross's part, it could conclude that "she is assuming the risk that the bus might stop and anything that might happen to her." The trial court disagreed that the evidence justified a contributory negligence instruction inasmuch as merely walking down the aisle "try[ing] to find a seat on the bus while it is moving" could not be deemed negligent without something additional that demonstrated a lack of due care. The court also declined to give WMATA's requested instruction on assumption of the risk inasmuch as it planned to cover the subject in a standard jury instruction.[2]

---

1. Cross contended that Carswell's report of a near-collision was fabricated.

2. The trial court instructed the jury on this point as follows:

█ Although the question.is a close one, WMATA persuades us that it was entitled to the contributory negligence instruction. "A party is entitled to an instruction on his or her theory of the case if the instruction is supported by the evidence." *Nimetz v. Cappadona,* 596 A.2d 603, 605 (D.C.1991). If there is "some evidence" to support a requested instruction, a trial judge does not have discretion to refuse to give it. *Nelson v. McCreary,* 694 A.2d 897, 901 (D.C.1997). In determining whether there was sufficient evidence presented, this court reviews the record in the light most favorable to the party requesting the instruction. *See id.*

█ Contributory negligence is "conduct which falls below the standard to which a plaintiff should conform for his own protection." *Scoggins v. Jude,* 419 A.2d 999, 1004 (D.C.1980); *see also Stager v. Schneider,* 494 A.2d 1307, 1311 (D.C. 1985) ("Contributory negligence is the failure to act with the prudence demanded of an ordinary reasonable person under like circumstances."). An instruction on contributory negligence is appropriate "if there is some evidence upon which a jury could find that the plaintiff, by encountering the risk created by the defendant's breach of duty, departed from an objective standard of reasonable care." *District of Columbia v. Peters,* 527 A.2d 1269, 1274 n. 4 (D.C.1987) (quoting *Sinai v. Polinger Co.,* 498 A.2d 520, 524 (D.C.1985)).

In this case Carswell testified that she saw Cross take her seat and did not see her again until after the sudden stop when Cross fell down the aisle. This testimony supported an inference that Cross got up to change seats after the bus started moving. Without more, as the trial court noted, this would not be enough to show negligence on Cross's part, even though she was elderly and (it could be inferred) somewhat infirm, for Carswell could say nothing about the manner—whether it was reckless or cautious—in which Cross attempted to change seats. But as WMATA argues, there was something more. There was Cross's own testimony that the bus "took off" with abnormal rapidity, such rapidity that she had trouble "hold[ing] on." The jury could have concluded that Cross should have known better than to leave her seat and enter the aisle in her physical condition when the bus was accelerating at such an unusual rate—in other words, that Cross imprudently put herself at risk of injury in doing so. This was enough, we think, to support WMATA's request for a contributory negligence instruction. *Cf. Turner v. Am. Motors Gen. Corp.,* 392 A.2d 1005, 1008 (D.C.1978) (stating that a question of contributory negligence was presented for the jury where an 87-year-old bus passenger was thrown to the floor and injured after she stood up from her seat in order to reach a bell cord located above the window).

█ We cannot say that the trial court's failure to instruct on contributory negligence was harmless. We appreciate that since the jury found WMATA liable, the jury might have found that the bus abrupt-

---

I instruct you, moreover, that a common carrier, that is to say a Metrobus, for instance, is not liable for sudden starts, stops, jerks or jars which are no more than the necessary or usual incidence of the operation of the vehicle.

*Passengers assume such risks as part of their travel.*

To receive damages for injuries sustained on a common carrier from a sudden start, stop, jerk or jar, the plaintiff must prove that the bus's movement was of such unusual and extraordinary force that it reasonably would not have happened in the ordinary operation of the vehicle.

(Emphasis added.) *See* STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (2002 Rev. Ed.), Instruction 8–5.

ly started moving before Cross could find a seat—in which case the jury would have rejected the essential premise of WMATA's contributory negligence defense, its claim that Cross sat down and then left her seat. But that is not necessarily what the jury did. The jury might have found WMATA liable even though it believed that Cross did get up from her seat on the theory that Carswell was negligent in driving the bus so erratically that Cross was caused to fall. If so, it would have been incumbent on the jury to consider whether Cross's own negligence contributed to that outcome.

■ As WMATA was entitled to an instruction on contributory negligence, and as we cannot say that the omission of that instruction was harmless, we must reverse the judgment in favor of Cross and remand for a new trial.[3]

*So ordered.*

3. We are not persuaded that the trial court also erred in declining to give a special instruction on assumption of risk. Standard Civil Jury Instruction 8–5, which the court did give, *see* footnote 2, *supra*, allowed the jury to consider whether Cross had assumed the risk of her injury even if she was not herself negligent. *See Psychiatric Inst. of Wash. v. Allen*, 509 A.2d 619, 625 (D.C.1986) ("A trial court has broad discretion in fashioning appropriate jury instructions, and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law.").

WMATA has raised other arguments in this appeal that we may dispose of summarily. We find it unnecessary to address WMATA's contention that plaintiff's counsel made improper missing witness and other arguments to the jury (which Cross now concedes he did; the question is whether the trial court took adequate remedial measures), or its con-

tention that certain medical evidence was admitted without sufficient foundation (which depends on the proper interpretation of a medical expert's ambiguous testimony). There is no reason to think those issues will recur at a new trial. WMATA's remaining contention is that it was entitled to judgment as a matter of law because Cross's theory of negligence at trial diverged from her theory as set forth in her complaint and the pretrial statement. The supposed divergence (from a claim of negligence in the way the driver *stopped* the bus to a claim of negligence in the way the driver *started* the bus) was not as stark as WMATA makes it out to be; in any event, WMATA was on notice of the variance in Cross's theory of liability from the time of her opening statement and never objected to it at trial. WMATA therefore impliedly consented to the change in theory and cannot object to it now. *See* Super. Ct. Civ. R. 15(b).