# District of Columbia
# Court of Appeals

**No. 14-CV-656**

ANDRE V. FISHER, JR.,

Appellant,

v.

GORDON L. LATNEY,

Appellee.



FILED

SEP - 1 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

CAV-4427-11

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: THOMPSON and MCLEESE, *Associate Judges*; and NEBEKER, *Senior Judge*.

**J U D G M E N T**

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment on appeal is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: September 1, 2016.

Opinion by Senior Judge Frank Q. Nebeker.

Dissenting opinion by Associate Judge Roy W. McLeese.

*Notice:  This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-656

FILED 9/1/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

ANDRE V. FISHER, JR., APPELLANT,

v.

GORDON L. LATNEY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAV-4427-11)

(Hon. Michael O'Keefe, Trial Judge)

(Submitted May 19, 2015                                    Decided September 1, 2016)

*Michael L. Smith* was on the brief for appellant.

*Maurice Jagne-Shaw* and *Timothy S. Smith* were on the brief for appellee.

Opinion for the court by *Senior Judge* NEBEKER.

Dissenting Opinion by *Associate Judge* MCLEESE at page 13.

Before THOMPSON and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*:  Appellant Andre V. Fisher, Jr., contends a trial court's determination that the injuries he sustained in a July 22, 2008 automobile accident were the partial result of his own negligence—barring his recovery under

the laws of the District of Columbia—should be reversed.  He argues that the trial court erred:  1) by refusing to instruct the jury on the last clear chance doctrine; 2) by denying his multiple motions for mistrial after a jury poll revealed the verdict was not unanimous; and 3) by dismissing the jury after ordering further deliberations and entering judgment as a matter of law in appellee's favor.  Finding no reversible error, we affirm.

## I.

On July 22, 2008, at approximately 9 P.M., appellee was driving approximately 25 miles per hour on Irving Street—a three-lane road—near the Washington Hospital Center in Washington, D.C.  He noticed a car—driven by appellant—in front of him driving erratically and moving from one lane to the next.  Appellee observed this car make multiple moves to the center lane in an effort to pass a car ahead of it in the right lane.  While travelling in the center lane, appellant was less than a full car length ahead of appellee, who was travelling in the left lane.  Then, all of a sudden, appellant moved from the right lane, "skipped over" the center lane "because that car was going too slow," and "c[a]me all the way over" into the left lane (appellee's lane) to "squeeze in between" appellee's car and the vehicle in front of it, at which point appellant's left rear bumper made contact with appellee's right front bumper.  This caused appellant's car to fishtail

and spin out of control. Appellant's car finally came to rest when it collided with a lamppost in the median strip between opposite directions of traffic. Appellee stopped to check on appellant. When appellee came upon him he said "my bad[,]" and "I'm sorry this had to happen." Appellant suffered two broken legs as a result of the accident.

At the close of evidence, appellee's counsel moved for a directed verdict. The trial court denied that motion in light of appellee's "my bad" comment, from which it found a reasonable juror could infer appellee admitted fault at the scene.

Later when discussing the instructions, appellant's counsel requested the trial court include the last clear chance doctrine instruction, arguing that appellee observed appellant driving erratically and therefore should have known to avoid driving near him. Appellee's counsel objected, arguing there was no evidence that appellant was oblivious to the danger his driving created. Ultimately the trial court denied the request claiming, "I don't think this is a last clear chance kind of case."

The trial judge instructed the jury on the law they were required to apply in evaluating the case. Specifically, he instructed them that they were required to decide whether they believed appellee's negligence was the proximate cause of the

accident and, if so, whether they also believed that appellant's negligence was a proximate cause. He also instructed the jury that their verdict required unanimity.

After hearing the instructions and counsels' closing arguments, the jury deliberated and returned their verdict, which was that appellee's negligence was not the proximate cause of the accident.[1] Appellant's counsel immediately requested a poll, which revealed that one juror did not agree with the announced verdict. Without prompting by either counsel or the trial court, the dissenting juror exclaimed "[b]ut everybody else is a yes[.]" Appellant's counsel moved for a mistrial, arguing the dissenting juror revealed the split.[2] The trial court denied that request and ordered the jury to continue deliberating, eventually with the aid of

---

[1] In response to a jury note, the court had instructed the jury that "an injury or damage is proximately caused by an act or failure to act whenever it appears from a preponderance of the evidence that the act or failure to act played a substantial part in bringing about the injury or damage. Moreover, it must be shown that the injury or damage was either a direct result or reasonably probable consequence of an act or failure to act."

[2] The court commented that, despite the first juror's statement that "everybody else is a yes," "[w]e don't know whether she's the only one. We only got to her." When appellant's counsel pointed out that "[n]o one else raised their hands, no one else said anything," the court observed, "No one else had an opportunity to."

further instruction in light of their impasse on the question of appellee's liability.[3] Following the instruction, the jury sent a note to the trial court which stated, "it seems we agree not to agree. If the questions were reversed we all agree that both were at fault, per unanimous decision. . . . [W]e seem to agree it's mostly Mr. Fisher." Appellant's counsel again moved for a mistrial, to which the trial court responded that "there's no dispute that Mr. Fisher was negligent." Despite appellant's objection, the trial court dismissed the jury and entered judgment as a matter of law in appellee's favor.

This timely appeal follows.

## II.

"'A trial court has broad discretion in fashioning appropriate jury instructions, and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law.'" *Howard Univ. v. Robert Williams*, 37 A.3d 896, 905-06 (D.C. 2012) (quoting *Psychiatric Inst. of Wash. v. Allen*, 509 A.2d

---

[3] The trial court instructed the jury pursuant to *Allen v. United States*, 164 U.S. 492 (1896), when they returned a note saying they were at an impasse with regard to appellee's liability.

619, 625 (D.C. 1986)). When deciding on potential instructions, a judge's decision must be based on a "'firm factual foundation.'" *Nelson v. McCreary*, 694 A.2d 897, 901 (D.C. 1997) (quoting *Johnson v. United States*, 398 A.2d 354, 364 (D.C. 1979)). Thus while a party is entitled to instructions supported by the evidence, *Washington Inv. Partners of Del., LLC. v. Securities House, K.S.C.C.*, 28 A.3d 566, 577 (D.C. 2011) (quoting *George Washington Univ. v. Waas*, 648 A.2d 178, 183 (D.C. 1994)), a trial court does not abuse discretion unless its reasons for denying a requested instruction lack a "[sufficient] factual predicate." *Howard Univ.*, *supra*, 37 A.3d at 906 (alteration in original) (citation omitted). "In reviewing the trial court's denial of a requested instruction on a party's theory of the case, we view the evidence in 'the light most favorable' to the appellant." *Id.* (quoting *Nelson*, *supra*, 694 A.2d at 901).

"In the District of Columbia, a plaintiff in a negligence action generally cannot recover when he is found contributorily negligent." *Washington Metro. Area Trans. Auth. v. Young*, 731 A.2d 389, 394 (D.C. 1999) (citing *Felton v. Wagner*, 512 A.2d 291, 296 (D.C. 1986)). An exception to this rule applies where a plaintiff can demonstrate that "the defendant had a superior opportunity to avoid the accident." *Id.* at 394 (quoting *Phillips v. District of Columbia Tran. Sys., Inc.*, 198 A.2d 740, 741-42 (D.C. 1964)). This theory, known as the last clear chance

doctrine, "'presupposes a perilous situation caused by the negligence of both the plaintiff and the defendant; it assumes that after the situation had been created there was a time when the defendant could, and the plaintiff could not, avoid the accident.'" *Id.* (quoting *Griffin v. Anderson*, 148 A.2d 713, 714 (D.C. 1959)). Proof of the following is required to garner the instruction:

> (1) that the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) that the plaintiff was oblivious to the danger, or unable to extricate [himself] from the position of danger; (3) that the defendant was aware, or by the exercise of reasonable case should have been aware, of the plaintiff's danger and of [his] oblivion to it or [his] inability to extricate [himself] from it; and (4) that the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate [himself] from it, but failed to do so.

*Felton*, *supra*, 512 A.2d at 296 (citing *Byrd v. Hawkins*, 404 A.2d 941, 942 (D.C. 1979)). Not every injured party is entitled to claim the doctrine, and the burden to establish its applicability rests with the plaintiff. *Id.* Moreover, last clear chance does not apply where "the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously." *Id.* (citing *Phillips*, *supra*, 198 A.2d at 742).

On the basis of the record before us, we are satisfied that the trial court did not abuse discretion by refusing the plaintiff's request to instruct the jury on the last clear chance doctrine. Appellant was, at all times, in control of his vehicle and was responsible for its operation. This included his hurried and sudden maneuvers between traffic. There was no evidence appellant was incapable of avoiding the risks that accompanies such behavior. Furthermore, we are reluctant to say that appellant was oblivious to any danger posed by appellee's car because changing lanes across multiple lanes (which is what the evidence showed appellant did just before the collision) always presents some danger. Thus, he failed to make the requisite showing under the second prong of *Felton* such that the trial judge was required to instruct on this doctrine. *Supra*, 512 A.2d at 296 (cited with approval in *District of Columbia v. Huysman*, 650 A.2d 1323, 1326 (D.C. 1994) (plaintiff carries burden to establish each element)).

But even assuming, *arguendo*, this factor had been supported by the evidence, appellant would still not have been entitled to the instruction because the evidence also established that the accident occurred under emergent circumstances—appellant unexpectedly moved from the center lane into the left lane (changing his previous behavior of moving to the center lane and then back to his own lane in front of the car he passed), where his left rear bumper made contact

with appellee's right front bumper causing appellant to fishtail out of control. To avoid this accident, appellee would have been required to act instantaneously, which *Felton*'s fourth prong does not contemplate. *Supra*, 512 A.2d at 296.

As such, we conclude the trial court did not abuse discretion by denying appellant's request to instruct the jury on the last clear chance doctrine.

## III.

Appellant contends the trial court erred in denying its motion for a mistrial after a jury poll revealed the originally announced verdict was not unanimous. "Whether to order a mistrial is subject to the broad discretion of the trial court and our standard of review is deferential." *Blackwell v. Dass*, 6 A.3d 1274, 1278 (D.C. 2010) (applying abuse of discretion standard to judge's decision to grant or deny mistrial in civil jury trial) (citations omitted). We will not reverse such a decision by the trial court unless "'it appears unreasonable, irrational, or unfair, or unless the situation is so extreme that failure to reverse would result in a miscarriage of justice.'" *Id.* (quoting *Lee v. United States*, 562 A.2d 1202, 1204 (D.C. 1989)).

Civil litigants are entitled to unanimous verdicts following jury trials in Superior Court. *District of Columbia Trans. Sys., Inc. v. McLeod*, 300 A.2d 440, 441 (D.C. 1973) (citing *Solar v. United States*, 86 A.2d 538, 540 (D.C. 1952)). They are also entitled to poll the jury before it is discharged to ensure its unanimity as to the verdict. *Humphries v. District of Columbia*, 174 U.S. 190, 194 (1899) (jury poll exists to ensure validity of announced verdict). We have held that where polling reveals that a juror dissents from the verdict, it is within the trial court's discretion "to permit the jury to deliberate further and give them proper instructions[.]" *Collier v. Young*, 94 A.2d 645, 646 (D.C. 1953) (citing *Bruce v. Chestnut Farms-Chevy Chase Dairy*, 126 F.2d 224, 225 (D.C. Cir. 1942) (trial judge should require further deliberation by jury where polling reveals dissent among jurors)).

Here, one juror who was polled revealed that she disagreed with the verdict. Although she also asserted—unprompted by the judge or either counsel—that she was the only dissenting vote, she was not questioned as to her motive for dissent and, as the judge observed, there was no confirmation from other jurors that she was the lone dissenter. Further, the record reveals no attempt to coerce her into unanimity such that further deliberations would have been tainted. *Simons v. Federal Bar Bldg. Corp.*, 275 A.2d 545, 554 (D.C. 1971) (citations omitted). Nor

does the record suggest that the juror was easily intimidated: she told the court, "everybody else is yes, . . . but I'm not going to change[.]"

Therefore, given the trial court's considerable discretion in this matter, we conclude that it did not abuse its discretion by denying appellant's motion for a mistrial and requiring the jury to deliberate further.

**IV.**

Judgment as a matter of law is properly granted when there is "no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue[.]" Super. Ct. Civ. R. 50 (a) (i). In reviewing a trial court's decision to enter judgment as a matter of law against a plaintiff, "the question for this court is whether a reasonable juror could have properly reached a verdict in favor of [the plaintiff." *Washington Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009) (quoting *Wilson v. Washington Metro. Area Transit Auth.*, 912 A.2d 1186, 1188-89 (D.C. 2006)).

The conundrum faced by this jury is not without precedent. Similar circumstances arose in *Blackwell*, where we determined that a jury did not fail to

follow its charge, and that the trial court did not abuse its discretion by amending the verdict form to combine the two standard negligence questions, when, during its deliberations, the jury indicated it was deadlocked as to the defendant's liability, but unanimously agreed that the plaintiff was contributorily negligent. *Supra*, 6 A.3d at 1278-79 (citing *Weeda v. District of Columbia*, 521 A.2d 1156, 1162-64 (D.C. 1987)). There we noted that the jury was attentive to its charge, and recognized the legal impact its conclusion—that the plaintiff was partially liable for the accident—would have on the verdict. *Blackwell*, *supra*, 6 A.3d at 1279-80.

This jury was equally attentive and savvy regarding the consequences of its findings. Although it was unable to reach a unanimous decision regarding appellee's liability, the jury's post-poll notes to the trial court show that it recognized that this question was purely "academic[,]" *id*. at 1280 (quoting *Weeda*, *supra*, 521 A.2d at 1164), in light of its unanimous agreement that appellant was at fault. Thus not only would it have been impossible for this jury to find in appellant's favor, it appears that it effectively found in appellee's favor, but was merely confounded by the verdict form.

Consequently, we hold that the trial court did not err by entering judgment as a matter of law in appellee's favor. *See Ferguson*, *supra*, 977 A.2d at 377; Super. Ct. Civ. R. 50 (a). The judgment is

*Affirmed.*

MCLEESE, *Associate Judge*, dissenting: The court affirms the trial court's decision to grant judgment as a matter of law to appellee Gordon L. Latney. I would reverse, and I therefore respectfully dissent.

**I.**

Appellant Andre V. Fisher, Jr., brought this action, claiming that Mr. Latney negligently caused a car accident in which Mr. Fisher was injured. At trial, Mr. Fisher testified that the accident occurred when he was changing lanes. He was driving at the speed limit, approximately twenty-five or thirty miles per hour, and was not cutting in and out of traffic. He looked in his mirror, saw nothing, and changed lanes. He was then hit from behind, causing his car to cross the median and hit a pole. After the accident, Mr. Latney, who was driving the other car

involved in the accident, went over to Mr. Fisher and said, "[M]y bad, I'm sorry this had to happen."

Mr. Latney testified that he saw Mr. Fisher driving in front of him. Mr. Fisher was going about thirty-five miles per hour, which was ten miles per hour above the speed limit. Mr. Fisher was cutting in and out of traffic. Mr. Latney could have slowed down to stay away from Mr. Fisher, but he did not do so. When Mr. Fisher slowed down at a traffic light, Mr. Latney caught up with Mr. Fisher. The light turned green, and Mr. Fisher tried to pass slower cars in front of him. When that proved impossible, Mr. Fisher cut across two lanes of traffic, in an effort to squeeze in between Mr. Latney's car and the car in front of Mr. Latney's car. Mr. Fisher's rear bumper hit Mr. Latney's front bumper, causing both cars to crash.

The verdict form posed two questions to the jury: "(1) Do you find that [Mr.] Latney was negligent, and that his negligence was a proximate cause of the auto accident on July 22, 2008?"; and, if the answer to the first question was yes, "(2) Do you find that [Mr.] Fisher was also negligent and that his negligence was a proximate cause of the accident on July 22, 2008?" At 2:01 p.m. on the last day of trial, the jury sent out a note indicating that it had reached a verdict. The jury then

announced a verdict answering the first question in the negative. During a jury poll, however, the first juror stated that she did not agree with the verdict but all of the other jurors did. The trial court sent the jury back to continue deliberations. At 2:34 p.m. on the same day, the jury sent out a note stating, "It appears we are at an impasse. And no further deliberation will produce a unanimous verdict." Over Mr. Fisher's objection and motion for a mistrial, the trial court gave the jury an anti-deadlock instruction taken from *Standardized Civil Jury Instructions for the District of Columbia*, No. 1-13 (2012 rev. ed.), and modeled on an instruction approved by this court in *Winters v. United States*, 317 A.2d 530 (D.C. 1974) (en banc). At 3:53 p.m. on the same day, the jury sent out a note stating, "It seems we agree . . . not to agree. If the questions were reverse[d,] we all agreed that both were at fault. Per unan[im]ous decision. Per neglect we seem[ to] agree [it is] mostly Mr. Fisher." Finally, at 3:57 p.m. the same day, the jury sent out a note stating, "After further deliberation we are unable to reach a unanimous decision on [q]uestion number 1. While question 2 may then not be rel[eva]nt, we do unanimously agree that Mr. Fisher was negligent and is most at fault for the accident."

Mr. Fisher again moved for a mistrial. The trial court instead discharged the jury and subsequently issued a written order granting judgment as a matter of law

to Mr. Latney. The trial court based its ruling on "the dearth of evidence regarding [Mr. Latney's] negligence, and ample evidence that [Mr. Fisher] was primarily responsible for the accident." The trial court also stated, "The fact that the jurors could not agree on whether [Mr. Latney] was negligent is indicative of the lack of compelling evidence on the issue. The Jur[ors] in their notes confirmed that they unanimously agreed that [Mr. Fisher] was negligent and 'most at fault[,]' which is a total bar to recovery."

## II.

> Judgment as a matter [of] law may be properly granted where there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue. Super. Ct. Civ. R. 50(a)(1). This court considers de novo whether the evidence was sufficient to go to the jury. The record must be viewed in the light most favorable to the non-moving party, who is entitled to the benefit of every reasonable inference from the evidence. It is the responsibility of the jury (and not the judge) to weigh the evidence and to pass upon the credibility of witnesses. If impartial triers of fact could reasonably find the plaintiff's evidence sufficient, the case may not be taken from the jury.

*Washington Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 376-77 (D.C. 2009) (internal quotation marks omitted).

I conclude that the evidence was legally sufficient to support a verdict in Mr. Fisher's favor. In granting judgment as a matter of law to Mr. Latney, the trial court first stated that it "did not credit" Mr. Fisher's version of events. Except in extraordinary circumstances not present here, however, a trial court ruling on a motion for judgment as a matter of law should not weigh the evidence or pass upon witness credibility. *Ferguson*, 977 A.2d at 377.

Second, the trial court referred without explanation to the "dearth of evidence" that Mr. Latney was negligent. To the contrary, when the evidence is viewed in the light most favorable to Mr. Fisher -- as it must be -- a reasonable juror could conclude that Mr. Latney was driving negligently and that Mr. Fisher was not. *Cf., e.g.*, *Dohoney v. Imperial Ins.*, 87 A.2d 412, 413-15 (D.C. 1952) (evidence permitted reasonable jury to find that plaintiff in negligence action was not contributorily negligent, where defendant struck rear side of plaintiff's car and plaintiff testified that she had not seen approaching traffic; "From the mere fact that [plaintiff] failed to observe [defendant's] automobile, it does not necessarily follow that she was negligent as a matter of law and that her negligence was a contributing cause to the accident. Generally negligence and contributory negligence are questions of fact to be decided by the trier of the facts, whether judge or jury. If fair-minded men may honestly draw different conclusions as to

the existence or nonexistence of the negligence charged, the question is not one of law but of fact.") (citing cases).

Third, the trial court stated that the jury's inability to reach a unanimous verdict as to whether Mr. Latney was negligent "is indicative of the lack of compelling evidence on the issue." The jury's inability to reach a verdict on an issue is not relevant to whether the evidence on the issue is legally sufficient. *See, e.g.*, *Yeager v. United States*, 557 U.S. 110, 121 (2009) ("Because a jury speaks only through its verdict, its failure to reach a verdict cannot—by negative implication—yield a piece of information that helps put together the trial puzzle. . . . [T]here is no way to decipher what a hung count represents. Even in the usual sense of 'relevance,' a hung count hardly makes the existence of any fact . . . more probable or less probable.") (internal quotation marks omitted); *cf. United States v. Powell*, 469 U.S. 57, 68 (1984) ("Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient.") (citations omitted). More fundamentally, Mr. Fisher did not have the burden of producing "compelling evidence" of Mr. Latney's negligence.

Rather, Mr. Fisher was required only to produce evidence sufficient to permit a reasonable juror to find that Mr. Latney was negligent.

The trial court's final reason for granting judgment as a matter of law to Mr. Latney was that jury notes indicated that the jury unanimously believed that Mr. Fisher was negligent, which is a "total bar to recovery." Like a jury's inability to reach a verdict, or a jury's verdict on other counts, a jury's notes are not relevant to whether the evidence is legally sufficient. *United States v. Lopez,* 252 Fed. App'x 908, 912 (10th Cir. 2007) ("Any note a jury sends out during its deliberations, however, is legally insignificant and has no place in our analysis when addressing the sufficiency of the evidence to support a verdict."); *Stevenson v. State*, No. 05-93-00795-CR, 1997 WL 472307, at *3 (Tex. Ct. App. Aug. 20, 1997) ("Whether the jury verdict is supported by legally sufficient evidence is measured by the evidence presented at trial, not by jury notes sent to the trial judge after both sides have closed. We conclude the jury note is immaterial for purposes of determining the sufficiency of the evidence.") (internal citation omitted). The jury notes therefore provide no basis upon which to grant judgment as a matter of law to Mr. Latney. (Reliance on the jury notes is in any event problematic for the additional reasons I discuss *infra*.)

The opinion for the court relies on *Blackwell v. Dass*, 6 A.3d 1274, 1276 (D.C. 2010), as supporting the trial court's grant of judgment as a matter of law to Mr. Latney. *Ante* at 11-12. In my view, that reliance is misplaced. In *Blackwell*, the trial court revised the verdict form based on notes that the jury sent out during deliberations. 6 A.3d at 1277. The jury thereafter returned a unanimous verdict. *Id.* This court affirmed, holding that the jury had not violated the trial court's instructions, that the trial court had not abused its discretion in revising the verdict form, and that the verdict was not tainted by juror coercion. *Id.* at 1278-81. Nothing in *Blackwell* supports a conclusion that the trial court in this case was correct to take the case away from the jury and grant judgment as a matter of law to Mr. Latney.

For the foregoing reasons, I would reverse and remand for further proceedings.

## III.

The opinion of the court addresses two further issues: whether the trial court correctly refused to give an instruction on the "last clear chance" doctrine and whether the trial court abused its discretion by refusing to grant a mistrial after a

juror had identified herself as the lone dissenter. *Ante* at 5-11. Given that the jury did not return a verdict, one might wonder why the court needs to address whether the jury was correctly instructed and whether the trial court should have granted a mistrial. I infer that the court addresses those issues because both the trial court and this court rely on the jury's notes as support for the decision to grant judgment as a matter of law. *Ante* at 12-13. As I have just indicated, jury notes are not relevant in reviewing a trial court's decision to grant judgment as a matter of law. Even if jury notes could be relevant in some circumstances, however, I conclude that no weight could appropriately be given to the jury notes in this case, because the jury was not correctly instructed and because the trial court's anti-deadlock instruction created an undue risk of juror coercion.

**A.**

Mr. Fisher asked the trial court to instruct the jury on the "last clear chance" doctrine. As the opinion for the court explains, *ante* at 6-7, that doctrine is an exception to the general rule in the District of Columbia that a plaintiff's contributory negligence bars recovery. The doctrine applies when:

> (1) the plaintiff was in a position of danger caused by the negligence of both the plaintiff and the defendant; (2) the

> plaintiff was oblivious to the danger or unable to extricate himself from the position of danger; (3) the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of his obliviousness to it, or of his inability to extricate himself from it; and (4) the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and of his inability to extricate himself from it, but failed to do so.

*Juvenalis v. District of Columbia*, 955 A.2d 187, 196 (D.C. 2008).

Our cases are not clear on the standard by which we review a trial court's refusal to give a requested instruction. *Compare, e.g., (Edward) Brown v. United States*, No. 13-CF-1234, 2016 WL 3031337, at *3 (D.C. May 26, 2016) ("[W]e review for abuse of discretion a trial court's assessment of whether a jury instruction is supported by the evidence."), *with, e.g., Andrews v. United States*, 125 A.3d 316, 321 (D.C. 2015) ("The sufficiency of the evidence to support the instruction is a question of law, as to which our review is de novo."); *see also, e.g., Washington Metro. Area Transit Auth. v. Cross*, 849 A.2d 1021, 1024 (D.C. 2004) ("If there is some evidence to support a requested instruction, a trial judge does not have discretion to refuse to give it.") (internal quotation marks omitted). It appears to be well settled, however, that "a requested instruction should be given if there is some evidence supporting" the request. *Dennis v. Jones*, 928 A.2d 672, 677 (D.C.

2007) (internal quotation marks omitted). Moreover, "[i]n determining whether there was sufficient evidence presented, this court reviews the record in the light most favorable to the party requesting the instruction." *Cross*, 849 A.2d at 1024. I see no need to delve further into the applicable standard of review. Even if we must defer to the trial court, I would hold that the trial court abused its discretion by denying the requested instruction.

The trial court did not give a specific reason for denying the requested instruction. In this court, Mr. Latney appears to argue that none of the requirements of the "last clear chance" doctrine were supported by the evidence. The opinion for the court appears to rely on the second and fourth requirements of the doctrine. *Ante* at 8-9. I conclude that there was some evidence to support a finding for Mr. Fisher on all four requirements.

First, Mr. Fisher testified that he looked in his mirror and did not see Mr. Latney's car behind him. That testimony was some evidence that Mr. Fisher was negligent. Mr. Latney's testimony that Mr. Fisher was speeding and cutting in and out of traffic was further evidence of Mr. Fisher's negligence. There also was some evidence that -- as Mr. Latney contemporaneously indicated to Mr. Fisher -- Mr. Latney's negligence contributed to the accident in which Mr. Latney's car

struck Mr. Fisher's car from behind. *Cf., e.g.*, *King v. Pagliaro Bros. Stone Co.*, 703 A.2d 1232, 1234 (D.C. 1997) (although "the negligence of the trailing car colliding with a forward car is essentially a question for the fact finder to determine and not a matter of law[,] . . . [w]e have also recognized . . . the generally accepted rule that the primary duty to avoid collision as between the motorist ahead and the motorist following lies with the motorist behind") (brackets and internal quotation marks omitted). Second, Mr. Fisher testified that he had checked his mirror before changing lanes and did not see a car. That was some evidence that Mr. Fisher was oblivious to the danger created by changing lanes when he did. Third, Mr. Latney acknowledged that he saw Mr. Fisher speeding and cutting in and out of traffic. That was some evidence that Mr. Latney was or should have been aware that Mr. Fisher was oblivious to the danger posed by his conduct. Fourth, Mr. Latney acknowledged that, when he saw Mr. Fisher cutting in and out of traffic several blocks before the accident, he could have slowed to avoid coming near Mr. Latney's car but did not do so. That was some evidence that Mr. Latney could have avoided the accident after becoming aware of the danger.

In concluding that the evidence did not support a "last clear chance" instruction, the opinion for the court makes several statements about what in the

court's view the evidence "showed" or "established." *Ante* at 8. But the evidence at trial was disputed, and we must view the evidence in the light most favorable to Mr. Fisher. In my view, there was some evidence that Mr. Fisher was carelessly changing lanes; that Mr. Fisher was not aware that any cars were behind him, and thus was unaware that his conduct was dangerous to such cars; that Mr. Latney noticed that Mr. Fisher was carelessly changing lanes and could have avoided coming near to Mr. Fisher's car; and that Mr. Latney did not keep his distance and instead carelessly collided with Mr. Fisher's car from behind. That evidence supported the requested instruction. *Cf., e.g.*, *Washington Metro. Area Transit Auth. v. Young*, 731 A.2d 389, 395-97 (D.C. 1999) (bicyclist was entitled to "last clear chance" instruction because bus driver could have taken precautions to avoid accident; "WMATA's claim that the driver would have had to act instantaneously to avoid the accident is unpersuasive because it assumes that the driver was under no duty to act until after he began the turn. The jury could reasonably find, however, that the driver could and should have avoided the accident by stopping *before* he began his turn.") (citations and internal quotation marks omitted).

For the foregoing reasons, I conclude that the trial court erred in denying the request for a "last clear chance" instruction. It follows that the trial court also erred in concluding that a finding by the jury that Mr. Fisher was negligent would

be a total bar to recovery. Rather, a correctly instructed jury could reasonably have found that Mr. Fisher had been negligent but nevertheless was entitled to recover under the "last clear chance" doctrine.

**B.**

Finally, the opinion for the court holds that the trial court did not abuse its discretion in refusing to grant a mistrial after a juror dissented during a jury poll and indicated that she was the lone dissenter. *Ante* at 9-11. In the circumstances of this case, I would hold to the contrary.

At the outset, I note that the opinion for the court does not squarely address what I view as the central question: whether the trial court was obliged to grant Mr. Fisher's second mistrial motion, made after the jury sent out a deadlock note. Instead, the opinion of the court focuses on whether the trial court was obliged to grant Mr. Fisher's first mistrial motion, made at the point that the juror identified herself as the lone dissenter during the jury poll. *Ante* at 9-11. I conclude that the trial court abused its discretion by giving an anti-deadlock instruction rather than granting Mr. Fisher's second mistrial motion.

In deciding whether a mistrial was required because of concerns about juror coercion arising from a breakdown in a jury poll, we consider: (1) the inherent coercive potential of the circumstances; and (2) whether actions the trial court took exacerbated or alleviated the situation's coercive potential. (*Marcus*) *Brown v. United States*, 59 A.3d 967, 974 (D.C. 2013).

> As we have noted, every jury poll has an inescapable element of coercion. When dissent is revealed in open court and the jury is simply instructed to continue deliberations, the most obvious danger is that the dissenting jurors will conclude that the trial judge is requiring further deliberations in order to eliminate their dissent.

*Id.* at 974-75 (internal quotation marks omitted). We have emphasized the heightened potential for coercion when "the numerical split of the jury and the identity of the only dissenter have been revealed in open court." *Crowder v. United States*, 383 A.2d 336, 342 (D.C. 1978). Finally, we have explained that the giving of an anti-deadlock instruction after a jury poll reveals dissent can "exacerbate[] the potential for coercion." *Benlamine v. United States*, 692 A.2d 1359, 1365 (D.C. 1997) (internal quotation marks omitted).

As far as I am aware, this court has never before approved the giving of an anti-deadlock instruction to a jury that reported a deadlock after a juror had been

identified as a lone dissenter in open court. To the contrary, we have on at least two occasions reversed convictions in comparable circumstances. *Benlamine*, 692 A.2d at 1360-65 (trial court abused its discretion by denying motion for mistrial and instead giving anti-deadlock instruction after jury poll revealed that ninth juror dissented from verdict); *Davis v. United States*, 669 A.2d 680, 682-85 (D.C. 1995) (same where third juror dissented from verdict) (citing cases).

This case differs from *Benlamine* and *Davis*, because the anti-deadlock instruction in this case contained language telling jurors not to surrender their "honest and firmly held beliefs simply to reach a verdict or to conform to feelings of other jurors." Such language can help to ameliorate coercion. *See, e.g.*, *(Marcus) Brown*, 59 A.3d at 977-78. Nevertheless, much of the language of the anti-deadlock instruction in this case was taken from the instruction in *Winters*. That language was designed to push jurors in the direction of unanimity. Specifically, the trial court told jurors that "[i]t is desirable that the case be decided"; that "it [was their] duty to decide the case"; that they should "be open to being convinced"; that they should question their position if other jurors were not persuaded; and that they should "try a little bit more to see if [they could] reach a unanimous decision." We have previously stated that "if the trial court uses language from the *Winters* anti-deadlock instruction for a poll breakdown, it will

increase the risk of coercion unacceptably." *(Marcus) Brown*, 59 A.3d at 974; *see also Smith v. United States*, 542 A.2d 823, 825 (D.C. 1988) ("When a jury reveals its numerical division and the judge then gives a *Winters* instruction, the potential for coercion is great.").

Moreover, in neither *Benlamine* nor *Davis* was a lone dissenter identified in open court, whereas in the present case the dissenting juror identified herself as the sole dissenter, which heightens the potential for coercion. *Crowder*, 383 A.2d at 342. Although the opinion for the court points out that there was no confirmation of the dissenting juror's statement that she was the lone dissenter, *ante* at 10, I see no reason to doubt the juror's statement. Moreover, "our evaluation of jury coercion focuses on probabilities, not certainties." *Davis*, 669 A.2d at 685. On balance, I would conclude that it was an abuse of discretion to give the jury an anti-deadlock instruction.

Because of the undue risk of juror coercion, no weight can appropriately be placed on the jury notes at issue. Thus, those notes should be disregarded even if they would otherwise have been relevant to the trial court's decision to grant judgment as a matter of law to Mr. Latney.

In sum, I would reverse the trial court's grant of judgment as a matter of law to Mr. Latney. I therefore respectfully dissent.